# UNITED STATES DISTRICT COURT

for the
### Western District of Kentucky
### Louisville Division

| | | |
|---|---|---|
| Brenda Kay Johnson | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | Case No.  `3:16-cv-310-TBR` |
| | ) | |
| National Credit Systems, Inc. | ) | |
| *Defendant* | ) | |
| Serve: | ) | |
| CT Corporation System | ) | |
| 306 W. Main Street | ) | |
| Suite 512 | ) | |
| Frankfort, KY 40601 | ) | |
| | ) | |
| Capital One Auto Finance, Inc. | ) | |
| *Defendant* | ) | |
| Serve: | ) | |
| Corporation Service Company | ) | |
| 211 E. 7th Street | ) | |
| Suite 620 | ) | |
| Austin, TX 78701 | ) | |
| | ) | |
| EOS CCA | ) | |
| *Assumed name for* | ) | |
| Collecto, Inc. | ) | |
| *Defendant* | ) | |
| Serve: | ) | |
| CT Corporation System | ) | |
| 306 W. Main Street | ) | |
| Suite 512 | ) | |
| Frankfort, KY 40601 | ) | |
| | ) | |

## COMPLAINT and DEMAND FOR JURY TRIAL

1.      This is an action brought by a consumer for violations of the Fair Debt Collection

Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), which was enacted to eliminate abusive debt

collection practices by debt collectors; and the Fair Credit Reporting Act, 15 U.S.C. § 1692 *et seq.*

("FCRA"), which was enacted to ensure fairness, accuracy and privacy of the personal information

contained in the files of the credit reporting agencies.

2.    Defendant National Credit Systems, Inc. ("NCS") violated the FDCPA by furnishing false credit information concerning Plaintiff Brenda Kay Johnson.

3.    NCS violated the FCRA by failing to conduct a reasonable investigation of Ms. Johnson's dispute concerning the same debt.

4.    Defendant Capital One Auto Finance, Inc. ("Capital One") violated the FCRA by failing to conduct a reasonable investigation of Ms. Johnson's dispute concerning negative credit information Capital One is furnishing to one or more consumer reporting agencies concerning Ms. Johnson.

5.    Defendant EOS CCA ("EOS") violated the FDCPA by attempting to collect a debt from Ms. Johnson that she does not owe and by adding interest and/or fees to a debt that EOS had no legal right to recover from Ms. Johnson.

**JURISDICTION**

6.    This Court has jurisdiction pursuant to the FDCPA, 15 U.S.C. § 1692k, FCRA, 15 U.S.C. §1681p, and 28 U.S.C. § 1367.

**PARTIES**

7.    Plaintiff Brenda Kay Johnson is a natural person who resides in Jefferson County, Ky.  Ms. Johnson is a natural individual person and a "consumer" within the meaning of the FDCPA, as defined by 15 U.S.C. § 1692a(3), and the FCRA, as defined at 15 U.S.C. § 1681a(c).

8.    Defendant National Credit Systems, Inc. is a Georgia corporation, which has registered with the Kentucky Secretary of State. NCS's principal place of business is located at 3750 Naturally Fresh Blvd., Atlanta, GA, 30349.

9.    NCS is a "specialized collection firm helping apartment owners and managers"

collect debts owed by tenants and former tenants. https://www.nationalcreditsystems.com/Company.aspx (visited May 20, 2016). NCS is a "debt collector" as defined by the FDCPA. 15 U.S.C. § 1692a(6) and a furnisher of credit information within the meaning of the FCRA.

10.     Defendant Capital One Auto Finance, Inc. is a Texas Corporation, which is not registered to do business in the Commonwealth of Kentucky.  Capital One is a furnisher of credit information within the meaning of the FCRA.

11.     Defendant EOS CCA, assumed name for Collecto, Inc., is a foreign corporation, the principal purpose of whose business is the collection of debts, operating a debt collection agency with its principal place of business located at 700 Longwater Drive, Norwell, MA 02061.

12.     EOS regularly collects or attempts to collect debts owed or due or asserted to be owed or due another, and is a "debt collector" within the meaning of the FDCPA, as defined at 15 U.S.C. § 1692a(6), and a furnisher of credit information within the meaning of the FCRA.

## STATEMENT OF FACTS

13.     Like many of her fellow Americans, Ms. Johnson is keenly aware of the importance of her credit score.

14.     As explained on Bankrate.com, a person's credit score is important to many major life events: including housing, employment, and credit:

> Today's economy runs on credit. If you want to get a mortgage loan for a house or a student loan to pay for college, or if you just want to put your lunch on a credit card, a company is extending credit to you.
>
> Your creditworthiness is defined by your three-digit credit score and is the key to your financial life. Good credit can be the make-or-break detail that determines whether you'll get a mortgage, car loan or student loan. On the other hand, bad credit will make it more difficult for you to get a credit card with a low interest rate and it will make it more expensive to borrow money for any purpose, says Liz Pulliam Weston, author of "Your Credit Score."

But even if you're not in the market for a loan, good credit can have a major impact, Weston says.

"Your credit information can be a factor in whether or not you can rent a nice apartment, how much you pay for insurance or whether or not you can get a job," she says. Landlords, insurers and employers frequently use credit information as a litmus test to see if the people they are dealing with are reliable and responsible.

Bad credit can suggest you're a risky bet. While bad credit may only show the details of how you deal with debt, some will extrapolate the characteristics from your financial life to other situations and assume that your bad credit implies that you may be just as irresponsible driving a car, taking care of an apartment or showing up for a job, Weston notes.

Good credit can signify that your financial situation—and the rest of your life—is on the right track.[1]

15.     In an effort to improve her credit score and rating, Ms. Johnson began reviewing her credit report.

16.     Ms. Johnson discovered several items that were not correct on her report.

17.     In particular, Ms. Johnson discovered false or incorrect negative credit information furnished by **(i)** NCS in connection with an alleged rental debt to Glenmary Village, **(ii)** Capital One in connection with a vehicle loan, and **(iii)** EOS in connection with an AT&T Mobility debt.

**I.     National Credit Systems, Inc. and the Alleged Glenmary Village Debt**

18.     Upon information and belief, the Glenmary Village was incurred solely for personal, family, and/or household purposes, which makes the Glenmary Village debt a "debt" within the meaning of the FDCPA, to wit an apartment rental for an individual person or persons.

19.     NCS furnished negative credit information concerning Ms. Johnson and the alleged Glenmary Village debt for purposes of collecting the alleged Glenmary Village debt from her.

---

[1] http://www.bankrate.com/finance/credit-cards/why-is-good-credit-so-important.aspx

*Sullivan v. Equifax, Inc*., CIV.A. 01-4336, 2002 WL 799856 (E.D. Pa. Apr. 19, 2002) ("[R]eporting a debt to a credit reporting agency is 'a powerful tool designed, in part, to wrench compliance with payment terms.'").

20.     Ms. Johnson has never lived in or rented property from or with Glenmary Village.

21.     Ms. Johnson did not incur and does not owe the Glenmary Village debt.

22.     Ms. Johnson, by counsel, disputed the alleged Glenmary Village debt furnished by NSC.

23.     Counsel for Ms. Johnson sent dispute letters dated April 14, 2016 to all three major consumer reporting agencies: Trans Union, LLC; Equifax Information Services, LLC ("Equifax"); and Experian Information Solutions, Inc. ("Experian").

24.     Counsel's dispute letters all contained the following:

>   You may be reporting negative credit information concerning Ms. Johnson, which she…disputes:

| | |
|---|---|
| Furnisher: | National Credit Systems |
| | P.O. Box 312125 |
| | Atlanta, GA 31131-2125 |
| Original Creditor: | Glenmary Village (Rental/Leasing) |
| Balance Due: | $450 |
| Last Update: | 3/21/2016 |

>   The above debt is not Ms. Johnson's debt. Ms. Johnson has never rented property from Glenmary Village or done *any* business with Glenmary Village.

25.     Upon information and belief, Trans Union, Equifax, and Experian notified NCS of Ms. Johnson's dispute, which triggered NCS's duty to re-investigate the debt under 15 U.S.C. § 1681s-2(b).

26.     Upon information and belief, NCS failed to conduct a reasonable investigation into Ms. Johnson's dispute concerning the negative credit information NCS is furnishing about Ms.

Johnson and the Glenmary Village debt.

27.     Upon information and belief, NCS erroneously verified the accuracy of alleged Glenmary Village debt as being correct.

28.     As a result of NCS's failure to conduct a reasonable investigation of Ms. Johnson's dispute, NCS continued to furnish false negative credit information to Equifax, Experian, and Trans Union concerning Ms. Johnson and the alleged Glenmary Village debt.

29.     NCS's failure to correct and update Ms. Johnson's consumer credit report has adversely affected Ms. Johnson by allowing false, negative credit information to appear on her consumer credit report, which negatively impacts Ms. Johnson's creditworthiness and credit score and has caused her to be denied rental housing.

30.     NCS violated the FDCPA by attempting to collect a debt from Ms. Johnson that she did and does not owe, by transmitting false credit information concerning Ms. Johnson and the Glenmary Village Debt, and by falsely representing that Ms. Johnson owes a debt that she does not owe.

31.     NCS violated the FCRA by failing to conduct a reasonable investigation of Ms. Johnson's dispute after receiving notice of Ms. Johnson's dispute from one or more consumer reporting agencies.


II.     **Capital One Auto Finance, Inc.**

32.     Ms. Johnson incurred the Capital One debt to purchase an automobile, which was used solely for personal, family, and/or household purposes.

33.     The negative credit information furnished by Capital One on Ms. Johnson's consumer credit reports includes a history of the loan.

-6-

34.     According to the Capital One loan history, Capital One charged off the loan to profit and loss in January 2014.

35.     The charged-off amount of the loan was $3,554.00.

36.     Ms. Johnson continued to make payments on the loan.

37.     Capital One continued to accept payments on the loan.

38.     By October 2014, Ms. Johnson had reduced the amount the Capital One loan to $1,447.00.

39.     For economic reasons out of her control, Ms. Johnson could no longer payments on the Capital One loan after October 2014.

40.     Capital One continued to report that the past amount due on the Capital One as $1,447.00 for the next 13 months through November 2015.

41.     In December 2016, Capital One inexplicably increased the reported-amount due on the loan by over $1,100.00.

42.     As of December 2016, Capital One falsely and erroneously furnished negative credit information about Ms. Johnson and the Capital One loan by reporting the amount due as $2,584.00.

43.     As of the date of the filing of this complaint, Capital One is still reporting that the amount due on the Capital One loan is $2,584.00.

44.     Counsel for Ms. Johnson sent dispute letters dated April 14, 2016 to all three major consumer reporting agencies: Trans Union, LLC; Equifax Information Services, LLC ("Equifax"); and Experian Information Solutions, Inc. ("Experian").

45.     Counsel's dispute letters all contained the following:

You may be reporting negative credit information concerning Ms. Johnson, which she…disputes:

| | |
|---|---|
| Creditor: | Capital One Auto Finance |
| | CB Disputes Team |
| | P.O. Box 259407 |
| | Plano, TX 75025 |
| Partial Acct. #: | 6206218597961**** |
| Balance Due: | $2,584.00 |
| Last Update: | 2/29/2016 |

Capital One charged off the above debt in January 2014. Ms. Johnson continued to make payments on the debt until she had made all of her contractually-obligated payments. But she did not pay some of the late fees and other penalties imposed by Capital One. At the time of charge off, Capital One represented that the amount of the debt was $1,447.00, which is what Capital One reported was due and owing on the debt through December 2015. Inexplicably, Capital One increased the alleged amount due on the debt to $2,584.00, without any explanation or justification for the $1,137.00 increase. Ms. Johnson disputes the amount of the Capital One debt. It should be no more than $1,447.00.

46. Upon information and belief, Trans Union, Equifax, and Experian notified Capital One of Ms. Johnson's dispute, which triggered Capital One's duty to re-investigate the debt under 15 U.S.C. § 1681s-2(b).

47. Upon information and belief, Capital One failed to conduct a reasonable investigation into Ms. Johnson's dispute concerning the negative credit information Capital One is furnishing about Ms. Johnson and the amount of the Capital One loan.

48. Upon information and belief, Capital One erroneously verified the accuracy of alleged amount of the Capital One loan as being correct.

49. As a result of Capital One's failure to conduct a reasonable investigation of Ms. Johnson's dispute, Capital One continued to furnish false negative credit information to Equifax, Experian, and Trans Union concerning Ms. Johnson and the alleged amount of the Capital One loan.

50. Capital One's failure to correct and update Ms. Johnson's consumer credit report has adversely affected Ms. Johnson by allowing false, negative credit information to appear on her consumer credit report, which negatively impacts Ms. Johnson's creditworthiness and credit score and has caused her to be denied rental housing.

51. Capital One violated the FCRA by failing to conduct a reasonable investigation of Ms. Johnson's dispute after receiving notice of Ms. Johnson's dispute from one or more consumer reporting agencies.

### III. EOS CCA and the Alleged AT&T Debt

52. On March 22, 2016, Ms. Johnson requested, obtained, and reviewed her consumer credit report from Tans Union, LLC.

53. Ms. Johnson's March 22nd Trans Union consumer credit report includes negative credit information furnished by EOS CCA ("EOS") in connection with an AT&T Mobility ("AT&T") debt allegedly owed by Ms. Johnson.

54. Ms. Johnson's March 22nd Trans Union consumer credit report provides in pertinent part:

### EOS CCA #40978**

P.O. BOX 981008
BOSTON, MA 02298
(855) 711-5165

|  |  |  |  |
|---|---|---|---|
|  |  | Balance: | $1,281 |
| Placed for Collection: | 08/13/2012 | Date Updated: | 09/25/2015 |
| Responsibility: | Individual Account | Original Amount: | $1,086 |
| Account Type: | Open Account |  |  |
| Loan Type: | COLLECTION AGENCY/ATTORNEY | Original Creditor: | AT&T MOBILITY (Utilities) |
|  |  | Past Due: | >$1,281< |

Remarks: >PLACED FOR COLLECTION<
Estimated month and year that this item will be removed: 08/2017

55.     Ms. Johnson never applied for and has never had an AT&T Mobility account.

56.     Upon information and belief, the AT&T Mobility account, if it existed, would have been used solely for personal, family, and/or household purposes, which makes the AT&T debt a "debt" within the meaning of the FDCPA.

57.     EOS furnished negative credit information concerning Ms. Johnson and the AT&T debt to one or more consumer reporting agencies for the purpose of collecting a "debt" from her. *Sullivan v. Equifax, Inc.*, CIV.A. 01-4336, 2002 WL 799856 (E.D. Pa. Apr. 19, 2002) ("[R]eporting a debt to a credit reporting agency is 'a powerful tool designed, in part, to wrench compliance with payment terms.'").

58.     Upon information and belief, EOS added interest, fees, and/or costs of $195.00 to the alleged principal amount of the AT&T debt to reach the "Past Due" amount of $1,281.00 as reported on Ms. Johnson's Trans Union consumer credit report.

59.     Upon information and belief, EOS had no legal right to accrue, assess, or collect the $195.00 it added to Ms. Johnson's alleged AT&T debt.

60.     EOS violated the FDCPA by attempting to collect a debt from Ms. Johnson that she did and does not owe, by transmitting false credit information concerning Ms. Johnson and the AT&T debt to one or more consumer reporting agencies, and by adding interest and/or fees to the AT&T debt that EOS had any legal right to recover from Ms. Johnson.

## Claims for Relief

### I.  Violations of the Fair Debt Collection Practices Act

#### A.  National Credit Systems, Inc.

61.  The foregoing acts and omissions of National Credit Systems, Inc. constitute violations of the FDCPA, including but not limited to 15 U.S.C. § 1692e and 15 U.S.C. § 1692f.

#### B.  EOS CCA

62.  The foregoing acts and omissions of EOS CCA constitute violations of the FDCPA, including but not limited to 15 U.S.C. § 1692e and 15 U.S.C. § 1692f.

### II.  Violations of the Fair Credit Reporting Act

#### A.  National Credit Systems, Inc.

63.  The foregoing acts and omissions of National Credit Systems, Inc. ("NCS") constitute violations of the FCRA, including, but not limited to:

##### i.  Violations of 15 U.S.C. § 1681n

64.  After being informed by one or more consumer reporting agencies that Ms. Johnson disputed the accuracy of the information it was providing concerning Ms. Johnson, NCS willfully failed to conduct a proper investigation of Ms. Johnson's disputes, filed with one or more consumer reporting agencies, that NCS was furnishing false negative credit information about Ms. Johnson and the Glenmary Village debt, which Ms. Johnson did not in fact owe.

65.  NCS willfully failed to review all relevant information purportedly provided by one or more consumer reporting agencies to NCS in conducting its investigation, as required by 15 U.S.C. § 1681s-2(b)(B).

66.  NCS willfully failed to direct the consumer reporting agencies to delete inaccurate information about Ms. Johnson pertaining to the Glenmary Village debt as required by 15 U.S.C.

§ 1681s-2(b)(C).

67.     Ms. Johnson has a private right of action to assert claims against NCS arising under 15 U.S.C. § 1681s-2(b).

68.     NCS is liable to Ms. Johnson for the actual damages she has sustained by reason of its violations of the FCRA, in an amount to be determined by the trier of fact, or up to $1,000.00 in statutory damages whichever is greater, together with an award of punitive damages in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, and he may recover therefore pursuant to 15 U.S.C. § 1681n.

ii.     **Violation of 15 U.S.C. § 1681o**

69.     After being informed by one or more consumer reporting agency that Ms. Johnson disputed the accuracy of the information it was providing concerning Ms. Johnson and the Glenmary Village debt, NCS negligently failed to conduct a proper investigation of Ms. Johnson's disputes, filed with one or more consumer reporting agency, that NCS was furnishing false negative credit information about Ms. Johnson and the Glenmary Village debt, which Ms. Johnson did not in fact owe.

70.     NCS negligently failed to review all relevant information purportedly provided by one or more consumer reporting agency to NCS in conducting its investigation, as required by 15 U.S.C. § 1681s-2(b)(B).

71.     NCS negligently failed to direct one or more consumer reporting agency to delete inaccurate information about Ms. Johnson pertaining to the Glenmary Village debt as required by 15 U.S.C. § 1681s-2(b)(C).

72.     Ms. Johnson has a private right of action to assert claims against NCS arising under 15 U.S.C. § 1681s-2(b).

73.     NCS is liable to Ms. Johnson for the actual damages she has sustained by reason of its violation of the FCRA, in an amount to be determined by the trier of fact, as well as her reasonable attorney's fees, and she may recover therefore pursuant to 15 U.S.C. § 1681o.

**B.      Capital One Auto Finance, Inc.**

74.     The foregoing acts and omissions of Capital One Auto Finance, Inc. ("Capital One") constitute violations of the FCRA, including, but not limited to:

**i.      Violations of 15 U.S.C. § 1681n**

75.     After being informed by one or more consumer reporting agencies that Ms. Johnson disputed the accuracy of the information it was providing concerning Ms. Johnson, Capital One willfully failed to conduct a proper investigation of Ms. Johnson's disputes, filed with one or more consumer reporting agencies, that Capital One was furnishing false negative credit information about Ms. Johnson and the Capital One loan.

76.     Capital One willfully failed to review all relevant information purportedly provided by one or more consumer reporting agencies to Capital One in conducting its investigation, as required by 15 U.S.C. § 1681s-2(b)(B).

77.     Capital One willfully failed to direct the consumer reporting agencies to delete inaccurate information about Ms. Johnson pertaining to the Capital One loan as required by 15 U.S.C. § 1681s-2(b)(C).

78.     Ms. Johnson has a private right of action to assert claims against Capital One arising under 15 U.S.C. § 1681s-2(b).

79.     Capital One is liable to Ms. Johnson for the actual damages she has sustained by reason of its violations of the FCRA, in an amount to be determined by the trier of fact, or up to

$1,000.00 in statutory damages whichever is greater, together with an award of punitive damages in an amount to be determined by the trier of fact, as well as his reasonable attorney's fees, and he may recover therefore pursuant to 15 U.S.C. § 1681n.

      **ii.    Violation of 15 U.S.C. § 1681o**

80.    After being informed by one or more consumer reporting agencies that Ms. Johnson disputed the accuracy of the information it was providing concerning Ms. Johnson and the Capital One loan, Capital One negligently failed to conduct a proper investigation of Ms. Johnson's disputes, filed with one or more consumer reporting agencies, that Capital One was furnishing false negative credit information about Ms. Johnson and the Capital One loan.

81.    Capital One negligently failed to review all relevant information purportedly provided by one or more consumer reporting agencies to Capital One in conducting its investigation, as required by 15 U.S.C. § 1681s-2(b)(B).

82.    Capital One negligently failed to direct one or more consumer reporting agencies to delete inaccurate information about Ms. Johnson pertaining to the Capital One loan as required by 15 U.S.C. § 1681s-2(b)(C).

83.    Ms. Johnson has a private right of action to assert claims against Capital One arising under 15 U.S.C. § 1681s-2(b).

84.    Capital One is liable to Ms. Johnson for the actual damages she has sustained by reason of its violation of the FCRA, in an amount to be determined by the trier of fact, as well as her reasonable attorney's fees, and she may recover therefore pursuant to 15 U.S.C. § 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Brenda Kay Johnson, requests that the Court grant the following relief:

1.     Award Plaintiff actual damages;

2.     Award Plaintiff statutory damages pursuant to the FDCPA and FCRA;

3.     Award Plaintiff punitive damages against National Credit Systems, Inc. and Capital One Auto Finance, Inc. pursuant to the FCRA, 15 U.S.C. § 1681n;

4.     Award Plaintiff reasonable attorney's fees pursuant to the FDCPA and FCRA;

5.     Grant Plaintiff a trial by jury on all issues deemed triable;

6.      Award Plaintiff costs; and

7.     Such other relief as may be just and proper.


Respectfully submitted,

/s/ James H. Lawson
**James H. Lawson**
*Lawson at Law, PLLC*
115 S. Sherrin Avenue
Suite 4
Louisville, KY 40207
Tel:     (502) 473-6525
Fax:     (502) 473-6561
james@kyconsumerlaw.com